**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | |
|---|---|
| Jeffrey Mador, : | |
| : | |
| *Plaintiff,* : | |
| : | |
| v. : | Case No. 6:24-CV-146-REW-HAI |
| : | |
| Armscor Precision International and : | |
| Armscor Global Defense, Inc., : | |
| : | |
| *Defendants.* : | |
| : | |

**DEFENDANTS ARMSCOR PRECISION INTERNATIONAL
& ARMSCOR GLOBAL DEFENSE, INC.'S VERIFIED
MOTION FOR SANCTIONS**

Defendants Armscor Precision International ("API") and Armscor Global Defense, Inc. ("AGDI"), pursuant to Fed.R.Civ.P. 11, request imposition of sanctions against Plaintiff and Plaintiff's counsel, including the striking and dismissal of Plaintiff's Complaint and the award to Defendants of reimbursement for their costs and attorneys' fees incurred in defense of this lawsuit, based on Plaintiff's lack of reasonable inquiry to determine whether the factual allegations of the Complaint have evidentiary support and, additionally, based on misrepresentations in the Complaint that Plaintiff "read and comprehended" the warnings in the subject pistol's User's Manual and that Defendants "failed to give adequate warnings of the dangers associated with the use of the Subject Pistol, or of the facts that made it likely that the Subject Model Pistol was dangerous."

FED.R.CIV.P. 11(b) requires that claims and legal contentions are warranted and that factual contentions have evidentiary support. If not, FED.R.CIV.P. 11(c) permits this Court to impose "an appropriate sanction."

1

First, sanctions are appropriate here because it appears clear that no "inquiry reasonable under the circumstances" was conducted to determine whether "the factual contentions have evidentiary support" prior to the filing of this lawsuit.

Second, sanctions are appropriate because a pleading misrepresentation occurred when Plaintiff alleged, in Complaint paragraph 69, that he "read and comprehended" the warnings in the User's Manual for the subject pistol; further alleged in Complaint paragraph 20 that such warnings included the advice, "Always keep the firearm holstered except when drawn for a definite purpose;" but then also in Complaint paragraph 73, misrepresented that Defendants "failed to give adequate warnings of the dangers associated with the use of the Subject Pistol, or of the facts that made it likely that the Subject Model Pistol was dangerous." *See* Complaint. Plaintiff complains that there was inadequate warning but also that he read them. If Plaintiff had actually "read and comprehended" (and heeded) the warnings in the User's Manual as alleged, then the incident which resulted in his injury would not have occurred. Worse, this appears to be a misrepresentation on the part of Plaintiff.

The User's Manual referenced in Plaintiff's Complaint, which Defendants had provided to Plaintiff along with the subject pistol, and which Plaintiff specifically quotes in his Complaint, includes the following text on the very next page:

## 03 | SAFETY PRECAUTIONS

### CARRYING A LOADED 1911 PISTOL

Handling, carrying or otherwise transporting a 1911 pistol with an unfired cartridge in the chamber ALWAYS INCREASES THE RISK of an unintended firing of the cartridge, with the resulting potential for personal INJURY and DEATH. If you choose to assume that increased risk, and are not intending to fire the pistol immediately, always engage the manual thumb safety which blocks both the fully cocked hammer and the sear, a condition known as "cocked and locked." Do not, under any circumstances, carry or transport a 1911 pistol with an unfired cartridge in the chamber and the hammer set in the half-cock notch or lowered to the full forward position. Both of those hammer positions are so unsafe when carrying a 1911 pistol with a loaded chamber that they must never be used. Even the act of manually lowering the hammer into either of those positions with a loaded chamber is so unsafe that it must never be done.

### SAFETY FEATURES

**TRIGGER GUARD** - this is the metal loop around the trigger intended to deflect unwanted contact with the trigger and thereby help prevent unintended gun firing.

**GRIP SAFETY** - this safety blocks rearward movement of the trigger in order to prevent the gun firing unless the grip safety is first disengaged by the firm grasp of the shooting hand in normal shooting position, thereby allowing complete rearward trigger movement.

**HALF-COCK NOTCH** - the half-cock notch in the hammer (often misleadingly called a safety notch) is intended to stop the hammer from reaching the firing pin in the unlikely event the full-cock notch fails to hold the hammer back. Should the hammer fall to the half-cock notch, the sear is then captured by the half-cock notch so that the sear can no longer be moved by the trigger until the malfunction is corrected. The half-cock notch IS NOT A SAFETY and must never be used as an alternative to engaging the thumb safety ("cocked and locked") when carrying the gun fully loaded.

**DISCONNECTOR** - this device interrupts the activation of the sear by the trigger in order to prevent the sear from releasing the hammer to fire a chambered cartridge until the slide and barrel are locked together and the trigger is released and pulled again.

**THUMB SAFETY** - this is the manual safety located at the upper rear of the grip frame so the thumb of the shooting hand can be used to easily engage or disengage it, which can only happen when the hammer is fully cocked. When up and engaged, it blocks both the sear and hammer to prevent the gun firing. When engaged, this safety also blocks movement of the slide. The "cocked and locked" carry condition is achieved when the thumb safety is engaged.

**INERTIA FIRING PIN** - the firing pin, designed to be shorter than its housing, is held to the rear by a spring and is intended to protrude to hit a cartridge primer only when a sufficient hammer blow overcomes the spring force and the inertia of the firing pin.

Certainly, even a minimally reasonable inquiry (such as simply turning the page) would have disclosed the foregoing. After all, the User's Manual itself is referenced in the Complaint. If Plaintiff "read and comprehended" as alleged, then he would have understood that "[h]andling, carrying or otherwise transporting a 1911 pistol with an unfired cartridge in the chamber ALWAYS INCREASES THE RISK of an unintended firing of the cartridge, with the resulting potential for personal INJURY and DEATH." *See* User's Manual Excerpt, attached with Anderson Affidavit.

While Defendants do not warn or even recommend against carrying a 1911 A1 pistol with an unfired cartridge in its chamber, they do warn of the increased risks associated with that common manner of carry, and provide very clear guidelines for doing so with the maximum level of safety possible. Obviously, an unintended discharge like Plaintiff's cannot possibly occur if

3

there is not a cartridge in the chamber, but it appears that that it was Plaintiff's incompetent handling of the pistol which ultimately lead to his injury.

The warnings in the User's Manual continue: "[i]f you choose to assume that increased risk, and are not intending to fire the pistol immediately, always engage the manual thumb safety which blocks both the fully cocked hammer and the sear, a condition known as 'cocked and locked.' Do not, under any circumstances, carry or transport a 1911 pistol with an unfired cartridge in the chamber and the hammer set in the half-cock notch or lowered to the full forward position. Both of those hammer positions are so unsafe when carrying a 1911 pistol with a loaded chamber that they must never be used. Even the act of manually lowering the hammer into either of those positions with a loaded chamber is so unsafe that it must never be done." The user manual also states that "The half-cock notch IS NOT A SAFETY and must never be used as an alternative to engaging the thumb safety ('cocked and locked') when carrying the gun fully loaded." *Id.*

For reference, the loading procedure, common to all 1911 type pistols is as follows: The pistol's slide is retracted fully to the rear and locked there using the slide stop. A loaded magazine is then inserted into the magazine well within the grip and locked into place. The slide can then be released by depressing the slide stop, allowing the slide to move forward and, in doing so, stripping the top cartridge from the magazine and pushing it forward and upward into the chamber. The pistol is at that point considered fully loaded and ready to fire, with its hammer fully cocked, so that pulling the trigger will fire the pistol. Following proper procedure, the user can then choose to either fire the pistol immediately, or engage the manual thumb safety to make the pistol safe until later. There are no other proper options. Again, the User Manual specifically warns, "[t]he half-cock notch IS NOT A SAFETY and must never be used as an alternative to engaging the thumb safety ('cocked and locked') when carrying the gun fully loaded." *Id.*

4

Nevertheless, after the pistol has been fully loaded, it is possible to control the pistol's hammer with one's thumb, continuing to carefully control it while at the same time releasing it to move forward by briefly pulling the trigger, completely releasing the trigger just as soon as the hammer can be moved slightly forward by the controlling thumb, then lowering the hammer until the sear fully engages the half-cock notch in the hammer, all the time keeping the finger off and away from the trigger.  *See* Excerpt from User's Manual, above.  At that point, the pistol cannot be fired while its sear is fully captured within its hammer's half-cock notch.  Trouble occurs when an unsophisticated user, or one who has not read and comprehended the warnings in the User's Manual, clumsily attempts to lower the hammer to the half-cock position while continuing to manipulate the trigger as the hammer is being lowered.  In that scenario, a "false half-cock" can result, as described in the attached Anderson Declaration.  In a "false half-cock" situation, the user may mistakenly believe that a *proper* half-cock has been achieved until the pistol is jarred enough to cause the hammer to fall the rest of the way, which can result in the pistol firing.  This potential, even though unlikely, is precisely why Defendants warn, in the strongest terms in their User's Manual, against using or attempting to use a 1911 pistol's half-cock position as an alternative to engaging the pistol's manual thumb safety, the same User's Manual which Plaintiff claims he read and comprehended.  *See supra.*

Plaintiff alleges in his Complaint that Defendants failed to warn Plaintiff, but the User's Manual clearly contained warnings about the danger with the firearm as detailed here.  "Under Kentucky products liability law, a warning is adequate if it conveys the product's underlying risk to a reasonable consumer."  *Yonts v. Easton Tech. Prods.*, 676 F. App'x 413, 418 (6th Cir. 2017)(citing *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. Ct. App. 1968)).  On its face, the User's Manual clearly warned Plaintiff of the risk of harm with the subject

5

pistol, advising of the increased risk associated with leaving a cartridge in the chamber and also warned against any attempt to place the pistol's hammer in the half-cock notch or lowered to the full forward position as an alternative to the manual thumb safety. Defendants *did* warn of the potential for the harm Plaintiff suffered, and Plaintiff admits in his Complaint that he *did* read and comprehend the warnings in the User's Manual.

      The attached Declaration of Steve Anderson of API provides that

> 5. I am informed and believe that, over the years since about 1990, AGDI and it's predecessor have produced and sold more than one million individual 1911 A1 type pistols, worldwide. Out of that number, my staff and I have dealt with a relatively tiny number of product liability claims in which the claimants insisted that a 1911 A1 pistol, built by AGDI and imported by API, had discharged "all by itself, without anything or anyone touching the trigger." Our questioning of such claimants invariably disclosed that, after the pistol had been loaded, and a live, unfired cartridge had been cycled into the barrel's chamber, the user lowered the pistol's hammer to (what the user believed was) its half-cock position.
>
> 6. After experimenting a bit, by manipulating the hammer and trigger simultaneously, I was soon able to duplicate what is known in the applicable literature as a "false half-cock" situation, where the tip of the leading edge of the hammer's half-cock notch is precariously balanced on the tip of the sear, instead of the sear being captured entirely within the half-cock notch, as it should, such that the hammer can be caused to fall with enough remaining force to fire a chambered cartridge perhaps three times out of five tries, depending on the hardness of the primer cup in the cartridge.

*See* attached Declaration of S. Anderson at ¶¶ 5-6.

      Based on the Anderson Declaration and contrary to Plaintiff's allegations in the Complaint, it appears Plaintiff failed to "read and understand" (and heed) the warnings in the User's Manual and likely (1) left or carried the firearm with an unfired cartridge in the chamber, thereby accepting the recognized increased risk of harm warned against in User's Manual and failed to "always engage the manual thumb safety" which would have blocked "both the fully cocked hammer and the sear," (*See* Excerpt from User's Manual, *supra*), and instead (2) unsuccessfully

6

attempted to cause the hammer to be set in the half-cock notch, as suggested by Anderson and as specifically warned against in the User's Manual. *Id.* As stated in the referenced User's Manual, "[b]oth of those hammer positions are so unsafe when carrying a 1911 pistol with a loaded chamber that they must never be used."

Plaintiff's failure to contact Defendants prior to filing this lawsuit constitutes a failure to conduct even minimal pre-suit inquiry, reasonable under the circumstances, to determine whether a factual basis exists to support Plaintiff's claims, and seeking to determine whether Defendants had any facts which could adequately explain how Plaintiff's injury was *not* the result of product defect. Such contact would obviously have revealed to Plaintiff the role that "false half-cock" likely played in causing Plaintiff's injury. Plaintiff could then have confirmed that with a qualified expert of his choice and thereby avoided wasting this Court's time (and clogging it's already crowded calendar) by filing this unfounded lawsuit.

This Court's standing General Order 19-10 advises that it is the parties' responsibility "to secure the just, speedy, and inexpensive determination of this action." As a result of Plaintiff's inaction pre-suit and with the filing of the lawsuit, the parties have both incurred needless legal costs and expenses. Defendants' counsel has attempted to learn of any factual basis for Plaintiff's claims, informally, by requesting that Plaintiff provide photographs of any suspected defect, inquiring as to how the subject pistol differed in any significant way from the millions of other Model 1911 pistols that have been produced over the last century, and even asking for an in-person inspection of the subject pistol, but all to no avail. Unless this matter is dismissed immediately, the Defendants will continue to accrue otherwise unjustified legal fees and costs.

Even at this early stage in the proceedings, with no formal discovery yet conducted, and based only on the allegations in the Complaint, Anderson's extensive experience, his familiarity

7

with the design of the subject firearm, and his knowledge of similar incidents, it convincingly appears that the accidental discharge of Plaintiff's firearm was likely the result of (1) Plaintiff's carrying the firearm with an unfired cartridge in the chamber, thereby accepting the increased risk of harm warned against in the subject pistol's User's Manual, together with his failing to "always engage the manual thumb safety" (*See* Excerpt from User's Manual, *supra*), and by his instead (2) attempting unsuccessfully to lower the hammer of firearm into the half-cock notch, as specifically warned against in the User's Manual. *Id.*

Based on all of the above, and pursuant to FED.R.CIV.P. 11, Defendants request this Court impose sanctions against Plaintiff and Plaintiff's attorneys, and in favor of Defendants, including the striking and dismissal of Plaintiff's claims against Defendants and the awarding to Defendants of reimbursement for their costs and attorneys fees incurred in the defense of this matter, if Plaintiff is unable to identify for this Court any actual facts which at least tend to rationally support the allegations in his Complaint, and which demonstrate that there is at least some question as to whether the unintended discharge of the subject pistol was the result of Plaintiff's unsuccessful attempt to place the subject pistol's hammer into the half-cock notch, as specifically warned against in the User's Manual.

## **RULE 11 CERTIFICATE**

Pursuant to Fed.R.Civ.P. 11(c)(2), and with the exception of this Certificate only, this Motion was previously sent to Plaintiff's counsel below via e-mail before it was filed with the court. Defendants received no response and the Plaintiff's claims were not "withdrawn or appropriately corrected" within 21 days after that service.

[Signature Block on Next Page]

/s/ R. Morgan Salisbury
Judd R. Uhl (89578)
R. Morgan Salisbury (94922)
LEWIS BRISBOIS BISGAARD & SMITH LLP
250 E. Fifth Street, Suite 2000
Cincinnati, OH 45202
(859) 663-9830 / (859) 663-9829 (Fax)
judd.uhl@lewisbrisbois.com
morgan.salisbury@lewisbrisbois.com
*Attorneys for Defendant Armscor Precision International and Armscor Global Defenses, Inc.*

As corporate representative of Defendants Armscor Global Defense, Inc., Armscor Precision International and Rock Island Armory U.S.A. Manufacturing, Inc.:

/s/ Stephen W. Anderson
Stephen W. Anderson
Vice President for Claims Resolution
Armscor Global Defense, Inc., Armscor Precision International and Rock Island Armory U.S.A. Manufacturing, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via e-mail this 19th day of February 2025 to:

| | |
|---|---|
| David L. Selby, II<br>Matthew J. Ford<br>BAILEY & GLASSER, LLP<br>3000 Riverchase Galleria, Suite 905<br>Birmingham, Alabama 35244<br>Tel.: (205) 988-9253<br>Fax: (205) 733-4896<br>dselby@baileyglasser.com<br>mford@baileyglasser.com | Travis A. Prince<br>BAILEY & GLASSER, LLP<br>94 Long Street, Suite 200<br>Westover, West Virginia 26501<br>Tel.: (304) 594-0087<br>Fax: (304) 594-9709<br>tprince@baileyglasser.com |

/s/ R. Morgan Salisbury
Judd R. Uhl (89578)
R. Morgan Salisbury (94922)