**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | | |
|---|---|---|
| Jeffrey Mador, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Case No. 6:24-CV-146-REW-HAI |
| | : | |
| Armscor Precision International and | : | |
| Armscor Global Defense, Inc., | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

### DEFENDANTS ARMSCOR PRECISION INTERNATIONAL & ARMSCOR GLOBAL DEFENSE, INC.'S VERIFIED REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Defendants Armscor Precision International ("API") and Armscor Global Defense, Inc. ("AGDI"), submit this for their Reply in Support of their Motion for Sanctions (DN 24) pursuant to Fed.R.Civ.P. 11. A supplemental Declaration of Steve Anderson is also attached in further support of the Motion as Exhibit A hereto.

Plaintiff's failure to contact Defendants before filing this product liability claim, while not specifically required, demonstrates Plaintiff's failure to conduct a reasonably inquiry into whether there was any factual basis for the allegations in the Complaint. If Plaintiff had contacted Defendant(s) to notify them of the Plaintiff's accident, Defendants could have, as they have in the past, immediately revealed the role a "false half-cock" plays, and has played, in those rare incidents very much like Plaintiff's, and how reading and heeding the clear, forceful warnings in the product User's Manual would have prevented Plaintiff's unfortunate mishap and injury. *See* Second Declaration of Steve Anderson, attached as Exhibit A. In short, the Plaintiff's failure to contact Defendants prior to filing the lawsuit is evidence of their failure to investigate the allegations in

the Complaint. Defendants' counsel has attempted to learn of any factual basis for Plaintiff's claims, informally, by requesting that Plaintiff provide photographs of any suspected defect, inquiring as to how the subject pistol differed in any significant way from the millions of other Model 1911 pistols that have been produced over the last century, and even asking for an in-person inspection of the subject pistol, but all to no avail.

Next, Plaintiff Mador, provides his own declaration in opposition to Defendants' Motion, stating simply that the hammer of the pistol at issue was not in the half-cock position or false half-cock position. Defendants would point out, however, that Plaintiff's declaration carefully avoids stating whether Plaintiff had lowered or had *attempted* to lower his pistol's hammer prior to the incident. Just how would Plaintiff know whether his pistol's hammer was in a false half-cock condition, if it was achieved inadvertently by lowering the pistol's hammer with his thumb while simultaneously continuing to manipulate the trigger as the hammer is lowered?

As Defendants pointed out previously, after the pistol has been fully loaded, it is possible to control the pistol's hammer with one's thumb, continuing to carefully control it while at the same time releasing it to move forward by briefly pulling the trigger, completely releasing the trigger just as soon as the hammer can be moved slightly forward by the controlling thumb, then lowering the hammer until the sear fully engages the half-cock notch in the hammer, all the time keeping the finger off and away from the trigger. *See* Excerpt from User's Manual in Defendants' Motion for Sanctions (DN 24). At that point, the pistol cannot be fired while its sear is fully captured within its hammer's half-cock notch. Trouble occurs when an unsophisticated user, or one who has not read and comprehended the warnings in the User's Manual, clumsily attempts to lower the hammer to the half-cock position while continuing to manipulate the trigger as the hammer is being lowered. In that scenario, a "false half-cock" can result, as described in the

previously attached Anderson Declaration. In a "false half-cock" situation, the user may mistakenly believe that a *proper* half-cock has been achieved until the pistol is jarred enough to cause the hammer to fall the rest of the way, which can result in the pistol firing. This potential, even though unlikely, is precisely why Defendants warn, in the strongest terms in their User's Manual, against using or attempting to use a 1911 pistol's half-cock position as an alternative to engaging the pistol's manual thumb safety, the same User's Manual which Plaintiff claims he read and comprehended.

The prior Declaration and the attached *Second* Declaration of Stephen Anderson notes that incidents such as Plaintiff's here have resulted "only when a 1911 A1 pistol is sufficiently disturbed while in a 'false half-cock' condition[.]" Exhibit A at ¶ 3. As Anderson points out:

> 4. Although a "false half-cock" condition can be achieved intentionally, with some practice, it is typically achieved unintentionally by an insufficiently trained or careless user continuing to simultaneously manipulate both the hammer and the trigger while unnecessarily lowering the pistol's hammer from its full-cock position with an unfired cartridge in the pistol's chamber. Unintentionally achieving a "false half-cock" condition is a rare occurrence, as unless it happens just so, the sear will either slip into and be fully captured by the hammer's half-cock notch or allow the hammer to be fully lowered to be at rest.
>
> 5. Unless a 1911 A1 pistol's hammer has been significantly altered or damaged, to the extent that it would be readily detectable upon a safety and function check, its hammer cannot be made to fall and fire the pistol from its full-cock position without the manual thumb safety first being disengaged, the grip safety disengaged, and the trigger pulled.
>
> 6. I am further informed and believe that knowledge of the condition commonly known as "false half-cock" is readily available from online public sources and is easily obtained through reasonable inquiry.

*See* Second Declaration of Anderson, Exhibit A.

The issues with the "half-cock" or "false half-cock" described here may not be so easily understood by the general public or those who are insufficiently trained and educated. This is

exactly Defendants' point: an insufficiently trained or careless user of the subject firearm should be aware of and educated by the subject User's Manual.  Moreover, before litigation is filed, a "inquiry reasonable under the circumstances" must be conducted to determine whether "the factual contentions have evidentiary support" per Rule 11.  What is the evidentiary support to conclude that no such half-cock or false half-cock position was at issue?

Sanctions are appropriate because a specific pleading misrepresentation occurred when Plaintiff alleged, in Complaint paragraph 69, that he "read and comprehended" the warnings in the User's Manual for the subject pistol; further alleged in Complaint paragraph 20 that such warnings included the advice, "Always keep the firearm holstered except when drawn for a definite purpose;" but then also in Complaint paragraph 73, misrepresented that Defendants "failed to give adequate warnings of the dangers associated with the use of the Subject Pistol, or of the facts that made it likely that the Subject Model Pistol was dangerous." *See* Complaint.  As Defendants pointed out previously, Plaintiff simultaneously complains that there was an inadequate warning but also that Plaintiff read the warnings.  If Plaintiff had actually "read and comprehended" (and heeded) the warnings in the User's Manual as alleged, then the incident which resulted in his injury would not have occurred.

The warnings in the User's Manual warns: "Do not, under any circumstances, carry or transport a 1911 pistol with an unfired cartridge in the chamber and the hammer set in the half-cock notch or lowered to the full forward position.  Both of those hammer positions are so unsafe when carrying a 1911 pistol with a loaded chamber that they must never be used.  Even the act of manually lowering the hammer into either of those positions with a loaded chamber is so unsafe that it must never be done." The user manual also states that "The half-cock notch IS NOT A

4

SAFETY and must never be used as an alternative to engaging the thumb safety ('cocked and locked') when carrying the gun fully loaded."

Based on the above and those issues raised in Defendants' Motion (DN 24), Defendants request this Court GRANT Defendants' Motion.

/s/ *R. Morgan Salisbury*
Judd R. Uhl (89578)
R. Morgan Salisbury (94922)
LEWIS BRISBOIS BISGAARD & SMITH LLP
250 E. Fifth Street, Suite 2000
Cincinnati, OH  45202
(859) 663-9830 / (859) 663-9829 (Fax)
judd.uhl@lewisbrisbois.com
morgan.salisbury@lewisbrisbois.com
*Attorneys for Defendant Armscor Precision*
*International and Armscor Global Defenses, Inc.*

As corporate representative of Defendants Armscor Global Defense, Inc., Armscor Precision International and Rock Island Armory U.S.A. Manufacturing, Inc.:

/s/ *Stephen W. Anderson*
Stephen W. Anderson
Vice President for Claims Resolution
Armscor Global Defense, Inc., Armscor Precision International and Rock Island Armory U.S.A. Manufacturing, Inc.

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing was sent via e-mail this <u>19th</u>

day of March 2025 to:

| | |
|---|---|
| David L. Selby, II<br>Matthew J. Ford<br>BAILEY & GLASSER, LLP<br>3000 Riverchase Galleria, Suite 905<br>Birmingham, Alabama 35244<br>Tel.:  (205) 988-9253<br>Fax:  (205) 733-4896<br>dselby@baileyglasser.com<br>mford@baileyglasser.com | Travis A. Prince<br>BAILEY & GLASSER, LLP<br>94 Long Street, Suite 200<br>Westover, West Virginia 26501<br>Tel.:  (304) 594-0087<br>Fax:  (304) 594-9709<br>tprince@baileyglasser.com |

                    /s/ *R. Morgan Salisbury*
                    Judd R. Uhl (89578)
                    R. Morgan Salisbury (94922)