UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JEFFREY MADOR, | ) |
| | ) |
| Plaintiff, | ) No. 6:24-cv-146-REW-HAI |
| | ) |
| v. | ) |
| | ) OPINION & ORDER |
| ARMSCOR PRECISION INTERNATIONAL, *also known as* API, *et al.*, | ) ) ) |
| | ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Armscor Precision International and Armscor Global Defense, Inc. (hereinafter collectively referred to as "Armscor"[1]) move for Rule 11 sanctions against Plaintiff Jeffrey Mador and his counsel. *See* DE 24. Mador responded in opposition, *see* DE 26, and Armscor replied. *See* DE 27. The matter is fully briefed and ripe for review. For the reasons discussed below, the Court **DENIES** DE 24.

**I.    Background**

Plaintiff Jeffrey Mador alleges, in the Complaint, that on October 10, 2023, he was severely injured when a firearm sold and manufactured by Armscor "unintentionally discharged while in its safety holder." *See* DE 1 ¶ 12 (Complaint). Specifically, Mador claims that after he placed the holstered pistol in the drawer of his nightstand and as he closed the drawer, "the pistol fired while in the safety holster without him touching or pulling the trigger." *See id.* ¶¶ 15–16. The round struck and hurt Mador. As a result, Mador filed a nine-count action against Armscor on October

---

[1] Both defendant entities are represented by the same counsel and on multiple occasions have made joint filings. *See, e.g.*, DE 22 (Joint Answer). This includes the present motion, where both defendants hold themselves out as a single unit seeking sanctions. *See generally* DE 24. Thus, for purposes of resolving this motion, the Court will refer to both defendants as "Armscor."

1

8, 2024, under a host of theories that includes negligence, manufacturing defect, design defect, failure to warn, and negligent misrepresentation. *See generally id.* ¶¶ 23–102. The Court's Scheduling Order set a fact discovery deadline for September 1, 2025, *see* DE 21, and Armscor filed a Joint Answer to the Complaint on January 23, 2025, without filing any Rule 12(b) motion. *See* DE 22.

On February 19, 2025, with discovery still in its infancy, Armscor filed a "Motion for Sanctions" against Mador and his counsel under Rule 11. *See* DE 24. The motion contends that in his failure-to-warn claim, Mador and counsel (i) made "misrepresentations in the Complaint that Plaintiff 'read and comprehended' the warnings in the subject pistol's [User Manual]," and yet that Armscor failed to warn adequately; and (ii) failed to conduct a "reasonable inquiry to determine whether the factual allegations of the Complaint have evidentiary support." *Id.* at 1. Based on these alleged transgressions, Armscor seeks Court-imposed sanctions against Mador that include "the striking and dismissal of Plaintiff's Complaint and the award to [Armscor] of reimbursement for their costs and attorneys' fees." *Id.*

In the failure-to-warn claim, Mador alleges in relevant part that (i) he read and comprehended the pistol's User Manual "as often and as completely as a reasonably prudent person would have done," *see* DE 1 ¶ 69, and (ii) the User Manual "failed to give adequate warnings of the dangers associated with the use [including the intended and/or reasonably foreseeable use] of the Subject Pistol, or of the facts that made it likely that the Subject [] Pistol was dangerous." *Id.* ¶ 73. Armscor contends that both of these statements are intentional misrepresentations. In support of this position, it offers a page from the manual plus an affidavit from Stephen Anderson, Armscor's Vice President for Claims Resolution. *See* DE 24-1.

Anderson states that in all previous instances in which a plaintiff claimed this pistol model discharged "all by itself," further "questioning of such claimants invariably disclosed that, after the pistol had been loaded, and a live, unfired cartridge had been cycled into the barrel's chamber, the user lowered the pistol's hammer to (what the user [incorrectly] believed was) its half-cock position." *Id.* at 3. The User Manual warns against lowering the pistol's hammer in this manner and of carrying or transporting the pistol in this or a full-forward hammer position. *See* DE 24 at 3. Thus, casting Anderson's affidavit as gospel, Armscor concludes that Mador, just like these invariable earlier claimants, must have also incorrectly lowered the hammer into what he believed was the half-cock position. In such case, Armscor posits that Mador must be lying about having read and understood the User Manual, given that it explicitly warns against this practice.

Armscor further goes on to argue that Mador's "failure to contact Defendants prior to filing this lawsuit constitutes a failure to conduct even minimal pre-suit inquiry," as "[s]uch contact would obviously have revealed to Plaintiff the role that 'false half-cock' likely played in causing Plaintiff's injury." *Id.* at 7. Armscor readily admits that it makes these accusations at an "early stage in the proceedings, with no formal discovery yet conducted, and based only on the allegations in the Complaint[.]" *Id.*

In response, Mador flatly denies Armscor's version of the facts and instead "maintains that (1) he did not use or attempt to use the half-cock position prior to the Subject Pistol's discharge, and (2) that the Subject Pistol's hammer was *not* set in the half-cock notch or in a false half-cock situation prior to discharge." DE 26 at 2. Like Armscor, Mador supports his factual version of the story with a singular, self-serving affidavit. *See* DE 26-1 (Jeffrey Mador Affidavit). Armscor replied, DE 27, to reiterate its arguments and to note that the referenced warning page also noted

the danger of carrying the gun, loaded, in the full-forward hammer position. The record is silent on the precise status of the firearm at the time of the discharge.

## II. Standard of Review

Rule 11 provides that whenever an attorney signs and/or files a pleading, the attorney certifies that they have made an "inquiry reasonable under the circumstances" that (1) "the claims, defenses, and other legal contentions [made in the pleading] are warranted by existing law," and (2) "the factual contentions [made in the pleading] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" FED. R. CIV. P. 11(b). The central purpose of Rule 11 is "to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 110 S. Ct. 2447, 2454 (1990). The rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Id.* (quotation marks omitted).

The Court may impose Rule 11 sanctions sua sponte or, as sought here, pursuant to a party's motion. *See* FED. R. CIV. P. 11(c)(1)–(3).[2] The test for determining whether to impose "sanctions is whether [an] individual's conduct was reasonable under the circumstances." *Tropf v. Fid. Nat'l Title Ins. Co.*, 289 F.3d 929, 939 (6th Cir. 2002) (quoting *Union Planters Bank v. L & J Dev. Co., Inc.*, 115 F.3d 378, 384 (6th Cir. 1997)). Reasonableness naturally signals an objective standard. *See Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990). Courts should test the reasonableness of conduct by determining "what was reasonable to believe at the time the pleading, motion, or other paper was submitted[,]" and should avoid using the "wisdom of hindsight" in

---

[2] The Rule includes a safe-harbor provision: Any motion for Rule 11 sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* at 11(c)(2). The safe harbor requirements are satisfied here.

4

their determinations. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010).

"If a district court determines that an attorney violated [Rule 11], the district court is 'given wide discretion' in 'deciding the nature and extent of the sanctions to impose.'" *James v. Caterpillar, Inc.*, 824 F. App'x 374, 377 (6th Cir. 2020) (quoting *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)). Even with this discretion, however, any sanction must still "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(1). Full dismissal of a claim "is the most severe sanction a court can impose under Rule 11." *James*, 824 F. App'x at 377 (citing 5A Charles Alan Wright & Arthur A. Miller, Federal Practice and Procedure § 1336.3 (4th ed. 2020)). Certainly, a sanction may extend to both an attorney and a represented party, but the Court must carefully determine sanctionable conduct and the blameworthy person or persons.

### III.    Analysis

The Court rejects, as premature, Armscor's request for sanctions. As Armscor itself admits, it moves for sanctions at an "early stage in the proceedings, *with no formal discovery yet conducted*, and based only on the allegations in the Complaint[.]" DE 24 at 7 (emphasis added). "As a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when . . . there is nothing before the court, save the bare allegations of the complaint." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). This is because "[a]t the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant." *Id.*; *see James*, 824 F. App'x at 379 ("[Defendant] argues that Plaintiffs repeatedly made 'claims about the facts supporting their claims and the procedural history of this litigation they knew to be materially false

5

and misleading.' Yet [Defendant] made this motion for sanctions before the close of discovery. Without more record evidence, assessing the validity of [Defendant]'s allegation is extremely difficult."); *Cofer v. Fin. Educ. Servs., Inc.*, No. 22-12759, 2024 WL 4204265, at *4 (E.D. Mich. Sept. 16, 2024) ("[A]s explained [by the Sixth Circuit], Rule 11 is generally not the proper vehicle to test the legal or factual sufficiency of a complaint."). Conversely, a court may proceed with less hesitation when a party moves for sanctions after discovery is complete and there is a motion for summary judgment before the Court. *See Tahfs*, 316 F.3d at 595.

Armscor's motion, made at the start of discovery and predicated wholly on unresolved factual disputes (the status of the firearm and the alleged mechanism of discharge), is the precise type of sanctions claim that is more appropriately addressed, if at all, later in the litigation process. Armscor claims that Mador is lying about the gun's half-cocked positioning, and Mador claims he's telling the truth. Each side supports its position with nothing more than a self-serving affidavit. With no meaningful fact discovery completed, the record lacks any evidence at this point to establish one side's story over the other. Thus, taking all contested facts in the nonmovant's favor, the Court cannot even conclude at this stage that Armscor's version of the incident is the prevailing account, let alone that Mador's version constitutes a misrepresentation in violation of Rule 11's standards.

It may or may not be true that, as Armscor contends, previous claimants were eventually found to have had the involved gun in an improper half-cock or false half-cock position. However, what Armscor lacks at this pre-discovery phase is any definitive evidence that *this* plaintiff is lying about *this* pistol's positioning in *this* case. Whatever Armscor's "invariable" experience, Mador is not held automatically to the paths of earlier claimants—he is entitled to an adjudication on the merits of his own particular case. Lacking any direct evidence that Mador is lying on this record,

6

the Court will not blindly accept Armscor's theory without fully developed facts or discovery to support it. This is simply not the appropriate time or mechanism for Armscor to test the factual sufficiency of Mador's Complaint. As summarized by the Sixth Circuit:

> [A]lthough we believe that filing a baseless complaint can give rise to a dismissal sanction in some cases, we believe that a court will invariably need to examine evidence outside the four corners of the complaint to justify such a sanction. *Tahfs*, 316 F.3d at 594. For example, a concession by counsel that he only filed the complaint to harass the defendant may qualify. *See* Fed. R. Civ. P. 11(b). But, at this point, the record here lacks sufficient evidence. Caterpillar argues that Plaintiffs repeatedly made "claims about the facts supporting their claims and the procedural history of this litigation they knew to be materially false and misleading." Yet Caterpillar made this motion for sanctions before the close of discovery. Without more record evidence, assessing the validity of Caterpillar's allegation is extremely difficult. *See Tahfs*, 316 F.3d at 594 ("While a party is bound by Rule 11 to refrain from filing a complaint 'for any improper purpose,' from making claims '[un]warranted by existing law,' or from making 'allegations and other factual contentions [without] evidentiary support,' *see* Fed. R. Civ. P. 11(b)(1)–(3), making those determinations is difficult when there is nothing before the court except the challenged complaint.").

*James*, 824 F. App'x at 37 (internal citation omitted). The same holds true at present. Sanctions, based on the pleadings alone, are not appropriate here, and Rule 11 is not interchangeable with summary judgment.

As to Mador's alleged failure to contact Armscor prior to initiating litigation, Armscor itself concedes that plaintiff's counsel was "not specifically required" to reach out before filing the Complaint. *See* DE 27 at 1. Armscor's concession is correct—there is no rule that counsel must contact an opposing party as part of its factual investigation prior to initiating litigation. Instead, the relevant question is simply whether counsel conducted an "inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b).

Here, Mador states that "Plaintiff, together with counsel, undertook an extensive pre-suit inquiry" where "counsel conducted fact-finding interviews with Plaintiff regarding the incident[,] . . . reviewed documentary evidence related to the incident, including the police report arising from

7

the incident[,] . . . [and] conferred with an engineering consultant knowledgeable in firearms including [] models such as the Subject Pistol." DE 26 at 3. Based on this inquiry, "counsel concluded that the factual contentions in Plaintiff's Complaint have evidentiary support and filed suit accordingly." *Id.* Plaintiff, for now, is entitled to his side of the story, and the findings of counsel's investigation purportedly supported that story. Armscor must now allow discovery to play out, at which point it can properly challenge the factual and legal adequacy of Mador's claims.

  The Court carefully looked at Armscor's dual theories. On the misrepresentation angle, Plaintiff rightly notes that two things could be true at the same time. Mador could have read and comprehended the warnings, reasonably, but the warnings could have been deficient to convey adequately the risks presented. Given the factual contest over the half-cock applicability, the Court could not accept a defense theory on that speculative ground. Armscor does warn against carrying the pistol in certain ways and against lowering the hammer manually. The Court is not prepared—on this record and briefing—to conclude that Armscor's warning method and text insulate it, as a matter of law, under Kentucky warning principles in all unintended discharge cases. How and why the discharge occurred here obviously will matter. The argument simply is reductive and procedurally premature.

  And on the evidentiary support, or lack of same, Plaintiff proffers the pre-suit steps and the bases. Perhaps those prove deficient, perhaps not. The pleading stage is not a ripe time for testing the case foundation. As has long been true, "in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation[.]" FED. R. CIV. P. 11 advisory committee's note to 1983 amendment; *id.* (noting, as to striking pleadings, that instead of Rule 11, "[m]otions under [the removed provision on striking pleadings] generally present issues better

8

dealt with under Rules 8, 12, or 56"). This is quite consistent with the *Tahfs* approach, which the Court will logically follow here.

Accordingly, the Court **DENIES** DE 24 as premature and unjustified at this stage. The denial is without prejudice. If Plaintiff's case ultimately founders, and if the record supports a Rule 11 filing, Armscor may reinitiate the request on a fulsome record.

This the 31st day of July, 2025.

Signed By:
*Robert E. Wier* REW
United States District Judge